IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| MICHAEL D. AMATO | § | |
| | § | |
| v. | § | 2:13-CV-0014 |
| | § | |
| UNITED STATES OF AMERICA | § | |

**REPORT AND RECOMMENDATION**
**TO DENY MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE**

Defendant MICHAEL D. AMATO has filed a Motion to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody. For the reasons hereinafter expressed, the undersigned Magistrate Judge is of the opinion defendant's claims are without merit and recommends those claims be DENIED.

I.
STATEMENT OF THE CASE

On September 13, 2011, defendant was charged by indictment in the Northern District of Texas, Amarillo Division, with the offense of Interstate Transportation of Stolen Property in violation of 18 U.S.C. § 2314. The indictment alleged the following:

Introduction

At all times material to this indictment:

1.  Michael D. Amato, defendant, operated as a coin dealer who appraised, bought, sold and exchanged coins. Amato represented that he worked for a company called Excell Marketing Group which was located in Patachogue, New York.

2.  Michael D. Amato, defendant, solicited business by telephoning individuals to inquire if they had coins they wished to sell or exchange. Amato sent literature about Excell to potential customers, which included representations that Excell was Better

Business Bureau accredited and that Excell's team had helped thousands of happy customers.

3. Lanell Montague, a resident of Tulia, Texas, had a collection of rare coins.

4. Michael D. Amato, defendant, contacted Montague via telephone and discussed her coin collection. Amato spoke with Montague over the course of several weeks about her coins.

5. On or about November 17, 2010, Montague sent Amato 47 of her rare coins for appraisal and possible sale. The coins were sent via Federal Express from Lubbock, Texas, and delivered to Amato's address in Patchogue, New York.

6. After receiving the coins, Amato stopped returning Montague's calls and did not respond to Montague's letters.

7. Amato never compensated Montague for the coins she sent him and did not return the coins.

### The Scheme

8. It was a part of the scheme and artifice to defraud that Michael D. Amato, defendant, typically sent publications to his potential clients to satisfy them that he was operating a legitimate and reputable business in order to persuade the person to send him their coins. The publications reflected that the Excell Marketing Group was accredited by the Better Business Bureau and that the Excell Team had thousands of happy customers, which was not true.

9. It was a part of the scheme and artifice to defraud that after Amato persuaded a person to send them their coins, that person was directed to send the coins by Federal Express to him in Patchogue, New York. After the individuals sent their coins to Amato, he did not pay for the coins, did not return the coins, and no longer received or returned telephone calls.

10. Amato solicited coins primarily from elderly people, and bilked more than $450,000 in rare coins from individuals in the States of Washington, Pennsylvania, Texas, California and Nebraska.

Incorporating the above, the one-count Indictment alleged:

On or about November 17, 2010, in the Amarillo Division of the Northern District of Texas and elsewhere, the defendant, Michael D. Amato, having devised and intended to devise the aforesaid scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations and promises, did transport

and cause to be transported, coins belonging to Lanell Montague, from the State of Texas, to the State of New York, in the execution and concealment of the aforesaid scheme and artifice to defraud Lanell Montague of property, that is coins, having a value of $5,000 or more.

Defendant was arrested in the Eastern District of New York, and retained counsel to represent him.

On October 10, 2011, defendant signed a Plea Agreement which contained several provisions. It set forth the maximum and minimum penalties for the offense, and noted defendant had reviewed the sentencing guidelines with his attorney and understood the guidelines were advisory only. The Agreement stated defendant would "cooperate with the government by giving truthful and complete information and/or testimony concerning his participation in the offense of conviction and knowledge of criminal activities" and noted the government would advise the Court of the extent of defendant's cooperation. The Agreement stated defendant's plea of guilty was freely and voluntarily made and was not the result of force or threats, or of promises apart from those set out in the Plea Agreement, and that there had been no guarantees or promises from anyone as to what sentence the Court would impose. The Agreement also stated defendant had "thoroughly reviewed all legal and factual aspects of this case with his lawyer and [was] fully satisfied with that lawyer's legal representation." The Agreement provided defendant had "received from his lawyer explanations satisfactory to him concerning each paragraph of this plea agreement, each of his rights affected by this agreement, and the alternatives available to him other than entering into this agreement." The Agreement further stated defendant conceded he was guilty and, after conferring with his lawyer, concluded it was in his best interest to enter into the plea agreement and plead guilty rather than proceed to trial. The Agreement noted it was a complete statement of the parties' agreement and could not be modified unless the modification was in writing and signed by all parties. The Plea Agreement <u>did not</u> include any provision that the government would file a motion to reduce sentence under Rule 35(b) of the

Federal Rules of Criminal Procedure.  On October 26, 2011, defendant, pursuant to the plea agreement, pled guilty to the charged offense, confirmed the terms of the Plea Agreement in open court, and acknowledged his plea of guilty was freely and voluntarily made.  The Court accepted defendant's plea and the plea agreement and ordered a Presentence Investigation Report (PSR).

On December 14, 2011, the United States Probation Officer filed a PSR finding defendant's offense has a Base Offense Level of 6, but added 14 levels for a loss of more than $400,000 but less than $1,000,000, and an additional 2 levels because the offense involved 10 or more victims.  The PSR decreased the offense level by 2 levels for defendant's acceptance of responsibility, and by an additional 1 level for early acceptance of responsibility and assisting authorities, resulting in a Total Offense Level of 19.  The PSR determined defendant's criminal history score to be 2, establishing a Criminal History Category of II.  After noting the statutory maximum term of imprisonment was 10 years, the PSR calculated defendant's guideline imprisonment range to be 33 months to 41 months.  The PRS further found restitution was mandatory in this case, and calculated the total amount of restitution to be $603,500.  The PSR did not identify any factors that would warrant a departure from the applicable sentencing guideline range.

On December 27, 2011, counsel for defendant filed objections to the PSR challenging defendant's criminal history calculation and the guideline range calculation.  In response, an addendum to the PSR was submitted January 4, 2012 which argued no changes should be made to the PSR.  On January 22, 2012, defendant filed a Sentencing Memorandum requesting a downward departure from the guideline range or, alternatively, sentencing at the low end of the guideline range, and requesting no fine or court ordered restitution be imposed or, alternatively, that only a minimum fine or restitution be imposed.

On January 24, 2012, the Court conducted a sentencing hearing during which defendant was

sentenced to a term of 60 months imprisonment, a sentence above the advisory guideline range, and restitution in the amount of $603,500. As reasons for the sentence above the advisory guideline system, the Court stated:

> The Court has not set a guideline sentence. The Court has considered all of the factors in 18 USC 3553(a), in particular the nature and circumstance of the offense and the history and characteristics of the Defendant. This offense was a calculated offense. It required extensive planning. It affected numerous people, twelve people listed in the Presentence Report; each of which was addressed separately in a calculated effort to defraud them. The offense is one that requires a sentence of at least 60 months in order to provide adequate deterrence for the commission of this offense and similar offenses and to show the seriousness of the offense that was involved. It is necessary, in the Court's opinion, to protect the public. The court notes that restitution in the amount of $603,500 is necessary to be paid as the Court has ordered. The Court has not imposed a fine because the restitution is very large and the Court believes that any resources that the defendant has should be applied towards the restitution and to remedy the hurt to the people that have been injured by the violation of the law.

Defendant did not file an appeal with the United States Court of Appeals for the Fifth Circuit.

On January 22, 2013, defendant placed this Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody in the prison mailing system, such motion being received and filed of record on January 24, 2013. The government filed a response in opposition to the motion to vacate on February 28, 2013. Defendant did not file a reply to the government's response.

## II.
## DEFENDANT'S ALLEGATIONS

Defendant appears to present the following claims in support of his motion:

Defendant was denied his constitutional right to effective assistance of counsel because trial counsel:

a.   failed to file a notice of appeal challenging the PSR enhancements and loss calculations as requested by defendant;

b.   failed to object to the PSR's recommendation concerning the enhancements and loss calculations;

      c.       failed to object on lack of venue grounds to the Court imposing sentence for conduct that occurred outside of the Northern District of Texas; and

      d.       failed to object to the Government's breach of the plea agreement when the PSR was received.

Defendant contends he was prejudiced by trial counsel's performance and states that but for counsel's deficiencies, he would have not pleaded guilty but, instead, would have proceeded to trial.

On August 15, 2013, in a written Order, this Court noted that defendant, by raising claims of ineffective assistance of trial counsel, had put communications between himself and his attorney directly in issue. The Court also noted the government had represented defendant's counsel had "expressed reasonable concern that he should not respond [to defendant's claims] until this Court [had] ruled that the attorney-client privilege is waived and he [is] no longer bound by the ethical duty of confidentiality." Consequently, the Court ordered defendant to file a pleading affirmatively stating whether he waived the attorney-client privilege with regard to communications between he and his attorney relevant to his alleged instances of deficient representation. Defendant did not file any response to the Court's order. Further, defendant has not communicated with the Court in any manner since the filing of his motion to vacate and other various motions on January 24, 2013. Inquiry to the Federal Bureau of Prisons revealed defendant was released from custody on July 17, 2015.

### III.
### STANDARD OF REVIEW

In its response, the government fully and accurately sets out, at pages 12-13, the appropriate standard of review for motions brought under 28 U.S.C. § 2255, including the reservation of such motions for transgressions of constitutional rights that could not be raised on direct appeal and which result in a complete miscarriage of justice. The Court further notes the heavy burden on a defendant when he has pled guilty to a charged offense, as well as the presumptions of verity of in-court declarations.

## IV.
## EFFECTIVENESS OF COUNSEL

The government has accurately set out, at pages 13-14, the appropriate standard of review for claims of ineffective assistance of counsel. These standards and limitations are applicable to this case.

### A.
### Failure to File Notice of Appeal

Defendant first argues counsel was deficient because he did not file a notice of appeal as requested by defendant. As noted by the government, the issue boils down to whether defendant told his attorney he wanted to appeal his sentence as defendant claims.

Although defendant, by asserting claims of ineffective assistance of counsel may have, by implication, waived the attorney-client privilege with respect to privileged communications with counsel, he did not respond to this Court's order to affirmatively state in writing whether he did, in fact, waive the attorney-client privilege with regard to communications between he and his attorney relevant to his alleged instances of deficient representation. Consequently, as a result of defendant's failure to prosecute and his failure to waive privilege, defendant's claim should be denied.

### B. Failure to Object to PSR

Defendant next argues counsel was deficient because he did not object to the offense-level increases set forth in the PSR based on the number of victims involved, and the total amount of loss incurred by the victims. Specifically, defendant contends he should not be held responsible for the victims or losses not charged in the indictment or admitted to in the factual resume, and that counsel was ineffective for failing to object to the PSR on these bases.

In its response, the government accurately sets forth, at pages 17-18, statutory and case law regarding the wide range of conduct the Court may consider, in its discretion, in determining

sentencing accountability. While the indictment against defendant only charged defendant with one offense against one victim, it did allege his offense was based on a scheme intended to defraud numerous people. In the factual resume, defendant admitted details of the scheme to defraud numerous victims, and agreed to provide restitution for all of his conduct, not just his conduct regarding the victim identified in the indictment. As argued by the government in its response, *see* pages 19-20, any objection by counsel to the enhancements would have been meritless as the Court had discretion to consider the additional victims and their losses. Defendant fails to demonstrate counsel was deficient.

To the extent defendant contends counsel was deficient for failing to object to the PSR on the basis that information concerning the additional victims and their losses was inaccurate, defendant's claim must fail. Defendant has failed to substantiate his claim that the information in the PSR was, in fact, incorrect. Moreover, considering his admissions in the factual resume and confirmation of the accuracy of the PSR to the Court at sentencing, defendant has failed to show any failure of counsel to object to the accuracy of the PSR was deficient. Defendant's claim should be denied.

### C. Failure to Advise of Court's Lack of Jurisdiction

Defendant also argues counsel was deficient for failing to advise him that the Court lacked "jurisdiction [over] any crime outside of its district," *viz*., for the scheme to transport the stolen property of the other victims referenced in the PSR who resided "outside the Northern district of Texas and outside the State of Texas." Defendant contends that had he known the Court lacked jurisdiction to hold him responsible for his actions involving these additional victims and the losses they incurred, he would not have pled guilty but, instead, would have insisted on going to trial where his sentence would have been less because he could have only been found guilty of the offense involving the one victim named in the indictment who resided in the Northern District.

As discussed above, defendant was charged and convicted of only the offense involving the victim who resided in the Northern District. Again, the Court had discretion to consider the other victims residing elsewhere who were part of the scheme in determining an appropriate sentence – even if defendant had only gone to trial on the charged offense. Moreover, as discussed by the government in its Response at pages 21-22 and based on the citations cited therein, this Court would have had jurisdiction and venue over the other victims of defendant's scheme had the government elected to charge defendant with separate offenses involving the other victims. Defendant has not demonstrated counsel's representation was deficient in this regard. Defendant's claims is without merit and should be denied.

### D.  Failure to Object to Breach of Plea Agreement

Defendant lastly contends counsel was ineffective for failing to object to the PSR based on the government's breach of its plea offer. Defendant contends he agreed to provide the government truthful information about his involvement in the offense in exchange for the government's agreement not to use any of the information it received from defendant to increase his sentence. Defendant argues the government discovered the additional victims and their losses from these debriefings, and that the information was then used by the government via probation to enhance defendant's sentence. Defendant contends counsel's failure to object to the enhancements as a violation of the plea agreement was deficient.

As noted by the government in its Response at pages 22-23, any self-incriminating information a defendant provides the government pursuant to a cooperation agreement will not be used against the defendant or in determining the applicable guideline range. USSG § 1B1.8(a). However, any information "known to the government prior to entering into the cooperation agreement" is excluded from this protection. USSG § 1B1.8(b)(1). Here, the government has demonstrated the information

regarding the additional victims and their losses was already known to the government <u>before</u> defendant entered into an agreement and was obtained independent of any information provided by defendant.  Defendant has not demonstrated the government did not already know about the additional victims and their losses from its criminal investigation of defendant.  Defendant has not demonstrated counsel was deficient for failing to make a meritless objection to the PSR.  This claim should be denied.

## V.
## RECOMMENDATION

It is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody filed by defendant MICHAEL D. AMATO should be DENIED.

## VI.
## INSTRUCTIONS FOR SERVICE and NOTICE OF RIGHT TO OBJECT

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this ___10th___ day of December 2015.

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

### * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation.  In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the

signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C)), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).